OPINION
Quentin Manning is appealing from the decision of the acting judge in Area One of the County Court of Montgomery County, Ohio, after a hearing, finding him guilty of carrying a concealed weapon. The facts of the case and the rationale for the decision of the trial court are succinctly but fully set forth in its decision and judgment, as follows:
 This matter came on for Trial to the Court on February 9, 2000. Appearing were the State of Ohio by Assistant Prosecuting Attorney Claudia J. Turrell, and the Defendant with Attorney Michael J. Koughan. Defendant is charged with carrying a concealed weapon in violation of Ohio Revised Code Section 2923.12(A): "No person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance." As used in Sections 2923.11 to 2923.24 of Ohio Revised Code, "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon.
 Based on the evidence presented, the Court enters the following findings of fact.
 On or about 2:52 a.m. on November 14, 1999, Deputy Delbert M. Braund of the Montgomery County Sheriff's Office observed the back of a vehicle parked in a high crime and burglary area. Deputy Braund drove by the vehicle and ran a records check and discovered a warrant on the registered owner of the vehicle. When the Deputy subsequently stopped the vehicle and questioned the Defendant who was driving the vehicle, the Defendant stated that he was not the registered owner of the vehicle but Defendant was unable to provide any photo identification and only showed Deputy Braund a bond receipt with Defendant's name on it and said that his license was being held in an unrelated case. The Defendant's I.D. was only confirmed when Defendant was at the jail being fingerprinted. Deputy Braund testified that Defendant was cursing and belligerent with him and other individuals were coming out of a known drug house, and he asked the Defendant to step out of the van. Deputy Braund then patted down Defendant for safety purposes before placing him in the back of the patrol vehicle and found a key chain with keys which Defendant said were to the vehicle. There was a small cylinder with the keys and a small pointed tip knife was inside the cylinder. When questioned by Deputy Braund, Defendant had stated that he was not carrying a weapon or anything that would stick the officer; this testimony was not challenged by Defendant, and Defendant testified that it was his knife and he knew the knife was on the key ring.
 The Court finds in considering the totality of the above circumstances — i.e., the time, place and situation — that the knife on Defendant's key ring was a concealed deadly weapon. Although the blade on the knife was less than two inches in length, it certainly was pointed and sharp enough to inflict death and to be used as a weapon, a deadly weapon by design also by the fact that the knife was concealed inside the cylinder and that the cylinder could easily and quickly be manipulated to make the knife available to use as a weapon as demonstrated by Deputy Braund at trial when he unscrewed the cylinder and then screwed the two halves of the cylinder together which placed the knife in a ready position, using only one hand, in no more than ten seconds. Although Defendant testified that he had used the knife to cut wires and clean fish and other uses other than as a weapon, this does not change the fact that this particular knife was a deadly weapon, as a deadly weapon such as a gun may have other uses than to injure or kill and still remain a deadly weapon. It was clearly evident by viewing the cylinder at the trial that the knife could not be seen without opening the cylinder. Defendant by his own conduct further concealed the weapon when, although he knew he had the knife on his person, told Deputy Braund that he did not have any weapon or anything that could stick the Deputy. The design of the knife and Defendant's failure to disclose his possession of the knife would have afforded Defendant a deadly degree of the element of surprise in the close confines of the Deputy's patrol vehicle. There is no other reasonable conclusion for Defendant's concealment of the knife other than as a weapon as Defendant was asked if he had any weapons and responded that he had no weapons or anything that would "stick" the officer and this latter comment is telling as to Defendant's contemplated use of the knife with the officer.
 Based upon these facts, the Court finds the Defendant Guilty beyond a reasonable doubt on the charge of carrying a concealed weapon. Defendant was knowingly carrying a concealed weapon on his person and ready at hand, a deadly weapon, said weapon an instrument capable of inflicting death and designed for use as a weapon and carried as a weapon.
 The Defendant is sentenced to thirty (30) days in jail and fined in the sum of $200.00 and placed on one (1) year supervised probation; Defendant is given credit for time served of three (3) days; the other twenty-seven (27) days of said sentence and $100.00 of said fine are suspended upon the successful completion of probation. Defendant shall pay the costs herein. Copies of this Decision and Judgment shall be served on the parties as noted below.
JUDGE JAMES L. MANNING
Manning's sole assignment of error is that his conviction is against the manifest weight of the evidence. We note that in weight of the evidence challenges, this court
 "[R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In a weight of the evidence challenge, we defer to the factfinder's decision as to which testimony to credit, and to what extent to do so. State v. Lawson
(Aug. 22, 1997), Montgomery App. No. 16288, unreported. This standard allows us to "judge the credibility of opposing opinion testimony, but not of fact testimony, unless it is so incredible that it defies belief." City of Fairborn v. Boles (May 15, 1998), Greene App. No. 97-CA-110, unreported.
We have read the transcript of the hearing and we find, that while this is a close issue, the testimony and the evidence, including the knife itself (which we saw and examined during oral argument) substantially and credibly support the decision of the trial court, which we will affirm.
We base our judgment on both the findings of the trial court and the testified concern of the arresting officer as to the lethality of the short knife. He was highly concerned for the officer's safety (Tr. 20-21) and stated that not only does it appear "to be an offensive weapon" but it also could cause deadly harm. (Tr. 23). He also stated: "I've seen knives and similar type things like this sold in survivalist magazines and — as concealed-type weapons — and I don't know of anything else that this knife would be concealed for other than an offensive weapon. That is what it — what it appeared to me." (Tr. 18). Given the often very dangerous duties of our police, we must accord their apprehensions a high degree of deference. The decision of the trial court is certainly within its discretion, and we cannot say that it committed an abuse of discretion.
The sole assignment of error is overruled, and the judgment is affirmed.